NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARIANNA NASYROVA, | : : : : : | Civil Action No. 14-1269 (SRC) |
| Plaintiff, | : : | OPINION |
| v. | : : : |  |
| IMMUNOMEDICS, INC., CYNTHIA L. SULLIVAN, and GERARD G. GORMAN, | : : : : |  |
| Defendants. | : : |  |

**CHESLER**, District Judge

This matter comes before the Court on Defendants' motion to dismiss the Second Amended Class Action Complaint for Violations of Federal Securities Laws (hereinafter, the "Second Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Lead Plaintiff John Neff and Named Plaintiff John Robustello (collectively, "Plaintiffs") have opposed the motion. The Court has considered the papers filed by the parties and, pursuant to Federal Rule of Civil Procedure 78, will rule on the motion without oral argument. For the reasons expressed below, Defendants' motion will be granted.

As the Court set forth in its Opinion of January 28, 2015 ("January 28 Opinion"), the gravamen of this securities fraud class action is that Defendant Immunomedics, Inc. ("Immunomedics") deceived shareholders by failing to disclose that its relationship with a key business partner, Takeda-Nycomed, had allegedly terminated. The Court incorporates by reference the background section of its January 28 Opinion. In this Opinion, it will rely on that

1

summary, including its overview of the Agreement between Immunomedics and Takeda-Nycomed, as if fully set forth herein.  The Court highlights below certain aspects of the amended pleading challenged in this motion.

According to the Second Amended Complaint, "[o]n October 3, 2013, Immunomedics received notification from Takeda-Nycomed, confirming that the Agreement was terminated." (Second Am. Compl. ¶ 38.)  There is no dispute that Immunomedics announced termination of the Agreement to the public on October 9, 2013 in an SEC Form 8-K filing and press release. Plaintiffs claim, however, that the obligation of disclosure regarding the Agreement's termination arose much earlier.  Plaintiffs maintain that Defendants were required to disclose that Immunomedics delivered a letter dated May 14, 2013 to Takeda-Nycomed advising that it considered Takeda-Nycomed to be in "material breach" of the Agreement.  The Second Amended Complaint summarizes the May 14, 2013 letter but does not quote language in the letter effecting a termination of the Agreement. Nevertheless, according to the Second Amended Complaint, the notice of breach is significant because, under the terms of the Agreement, it initiated a 90-day cure period which would necessarily conclude with the automatic termination of the Agreement "unless Takeda-Nycomed took affirmative actions to successfully cure the breach."  (Id. ¶ 55(a).)  Plaintiffs allege that "by August 12, 2013, Takeda-Nycomed's breach had not been cured, and the Agreement terminated as a result."  (Id. ¶ 10.)

In support of this assertion that the notice of breach "automatically triggered the termination of the Agreement," (Id. ¶ 9), Plaintiffs cite Article 14.2 of the Agreement.  That provision states as follows:

> Termination for Breach.  Either Party may, without prejudice to any other remedies available to it at law or in equity, terminate this Agreement in the event that the other Party (the "Breaching Party") shall have materially breached or defaulted in the performance of any of its obligations.  The

2

> Breaching Party shall have ninety (90) days (five (5) days in the event of non-payment) after written notice thereof was provided to the Breaching Party by the non-breaching Party, to remedy such default. Any such termination shall become effective at the end of such ninety (90) day period (five (5) day period for non-payment) unless the Breaching Party has cured any such breach or default prior to the expiration of such ninety (90) day period (five (5) day period for non-payment).

(Second Am. Compl., Ex. 1.)

Plaintiffs contend that the SEC Form 10-K filed by Immunomedics on August 22, 2013 was misleading because it "failed to disclose the Notice of Breach or the termination." (Id. ¶ 52.) They further allege that the filing was also misleading in that it made positive statements about the subject of the Agreement, the development by Takeda-Nycomed of Immunomedics product veltuzumab, "as if the Agreement was still in full force." (Id. ¶ 11.)

On January 28, 2015, the Court dismissed the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), holding that no actionable claim under Exchange Act § 10(b) and Rule 10b-5 had been pled based on the allegation that Immunomedics had failed to disclose the notice of breach issued on May 14, 2013. In the January 28 Opinion, the Court reasoned that Plaintiffs had failed to point to an obligation of disclosure relating to Takeda-Nycomed's mere breach of the Agreement, that is, a duty to speak relating to an event or occurrence indicating deterioration of a business relationship but not its termination. While the Amended Complaint did not allege an automatic termination of the Agreement at the conclusion of the 90-day cure period, the argument was raised in Plaintiffs' opposition brief in an unsuccessful attempt to withstand the motion to dismiss the Amended Complaint. The Court found the claim insufficient under the applicable pleading standards of Rule 8(a) and the PSLRA but provided Plaintiffs an opportunity to file a Second Amended Complaint.

Now, Plaintiffs maintain, the Second Amended Complaint states a viable § 10(b) claim by *expressly* alleging that the Agreement automatically terminated on August 12, 2013, triggering the duty to disclose under Rule 10b-5 and securities fraud jurisprudence. Plaintiffs argue that the Court must, on this Rule 12(b)(6) motion, credit their factual allegation that the termination occurred automatically per the terms of the Agreement, find that an actionable misleading statement or omission under Rule 12b-5 has been adequately pled, and allow the contractual interpretation question to be explored in discovery.

In spite of this express allegation, the deficiency in Plaintiff's § 10(b) claim persists in the Second Amended Complaint.  The Court applies the same legal standard of review as set forth in the January 28 Opinion and incorporates its summary of the law on omissions-based violations of Rule 10b-5.  As Immunomedics indicates, the Court's January 28 Opinion not only held that the securities fraud claim was insufficient based on the theory that Immunomedics was required to disclose the notice of breach to Takeda-Nycomed, but also expressly addressed Plaintiffs' alternative theory that a duty to disclose arose on August 12, 2013, 90 days from the notice of breach.  The Court rejected Plaintiffs' argument that the expiration of the cure period, initiated by the May 14, 2013 notice of material breach issued by Immunomedics, resulted in automatic termination of the Agreement and thus triggered a duty of disclosure. The Court will not repeat its analysis here.

The Second Amended Complaint likewise fails to allege with plausibility that an event requiring a disclosure by Immunomedics—termination of the Agreement—occurred in August 2013.  The amended pleading's assertion that the Agreement "automatically" terminated does not suffice to allege that Immunomedics's 2013 Form 10-K was misleading because the factual allegation of termination is at odds with both the Agreement itself and with the conduct of

4

Immunomedics, as alleged in the Second Amended Complaint. While a court must, on a Rule 12(b)(6) motion, accept all well-pled factual allegations as true, this requirement does not apply when the allegations are contradicted by the documents attached to the Complaint upon which its claims are based. See Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp., 27 F. App'x 94, 99-100 (3d Cir. 2002) (holding that court need not accept as true, allegations which are contradicted by documents properly considered on a motion to dismiss); see also City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998) (holding that, on a motion to dismiss, a court need not credit "unsupported conclusions and unwarranted inferences."); ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n. 8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."). The provision on which Plaintiffs' termination allegation relies, Article 14.2 of the Agreement, allows either party to terminate the Agreement based on the other's material breach but also gives the breaching party an opportunity to remedy the breach. The provision was invoked by Immunomedics for its benefit and clearly gave Immunomedics, as the non-breaching party, the prerogative to terminate the Agreement if the breach, in its view, remained uncured. Yet, nowhere in the Second Amended Complaint is it alleged that Immunomedics advised Takeda-Nycomed that it was terminating the Agreement or that Immunomedics regarded the Agreement as terminated on August 12, 2013 when the Takeda-Nycomed's time to remedy the breach elapsed. Apparently recognizing that such an allegation is missing, Plaintiffs insist that, once set in motion by the May 14, 2013 notice of material breach, the termination procedure of section 14.2 was self-executing and irreversible, even by the party that gave the notice of breach and was in the position to determine whether the breaching party had made sufficient efforts to perform as required. This interpretation finds no support in the

Agreement itself, and, as it essentially renders the non-breaching party powerless to preserve the Agreement, contravenes well-settled rules of contract interpretation. "Under New Jersey law, the court should adopt the most fair and reasonable interpretation of the contract so as to impute the least hardship on either of the contracting parties." Conair Corp. v. Old Dominion Freight Line, Inc., 22 F.3d 529, 533 (3d Cir. 1994). The provision's cure period, which is key to Plaintiffs' assertion of automatic termination, prevents terminations for breach from becoming effective immediately and without notice to the breaching party, but there is no indication that it functions to deprive the parties, and particularly the non-breaching party, of control over whether to continue to implement the Agreement or not. As was the case with the previous pleading, the Second Amended Complaint simply contains no allegation which states or supports the reasonable inference that Immunomedics exercised its right to terminate the Agreement, either when it issued its notice of material breach in May 2013 or at any time thereafter.

In short, Plaintiffs have failed to allege, as required by the PSLRA, that Defendants made a misrepresentation or omission of material fact. The Court finds that the Second Amended Complaint fails to plead a sufficient Section 10(b) claim. By extension, it also fails to state an actionable violation of Exchange Act Section 20(a) by the individual Defendants, a claim which is asserted in the second count of the pleading. In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 285 (3d Cir. 2006) (holding that a plaintiff's failure to plead an underlying violation of Section 10(b) warrants dismissal of his Section 20(a) control person claim predicated on that violation). The Second Amended Complaint will be dismissed in its entirety pursuant to Rule 12(b)(6). Leave to re-plead will not be granted, as Plaintiffs have amended their Complaint twice, most recently with the Court's leave upon dismissing the Amended Complaint pursuant to Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding

that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).  An appropriate Order will be filed.


          s/ Stanley R. Chesler
    STANLEY R. CHESLER
  United States District Judge

Dated:  July 15, 2015